IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PPE TRADE & SUPPORT, LLC,                Case Number: _____

    Plaintiff,

v.

SHELDON JASON BURNETT,
SHELDON JASON BURNETT, ESQ., P.A.,
and ANALYTICS ASSOCIATES, LLC,

    Defendants.
_____/

## COMPLAINT

PPE Trade and Support, LLC ("Plaintiff"), submits this Complaint seeking relief against Defendants Sheldon Jason Burnett ("Burnett"), Sheldon Jason Burnett, Esq. P.A. ("Burnett Law"), and Analytics Associates, LLC ("Analytics"), and states the following:

## I.
## Parties

1. Plaintiff, PPE Trade & Support, LLC is a limited liability company formed and existing under the laws of the State of Delaware. Its main office and headquarters are located in Los Angeles, California. It is a citizen of California for purposes of diversity jurisdiction. Plaintiff's Chief Operating Officer is Mr. Yida Gao.

2. Defendant, Sheldon Jason Burnett is a Florida resident, with business operations in Florida and is otherwise *sui juris*.

3. Defendant Sheldon Jason Burnett, Esq. P.A. is a professional association whose registered mailing address with the Florida Bar is 11395 S.W. 95th Street, Miami, Florida 33176. Burnett Law is a citizen of Florida for diversity purposes because its nerve center is in Florida.

The Florida Bar's online records indicate that Burnett Law has just one attorney, Burnett.

4.  Defendant, Analytics Associates, LLC. is headquartered in Albuquerque, New Mexico, and is a citizen of Florida for purposes of diversity jurisdiction by virtue of its conducting business in Miami, Florida through its agent and principal, Burnett, who signs off on invoices for Analytics as its "President."

## II.
## Jurisdiction and Venue

5.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6.  Jurisdiction is also proper over all Defendants pursuant to § 48.193(1), Fla. Stats., as the Defendants operate, conduct, engage in, and carry on business in the State of Florida and have an office and agent in this State.

7.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.
## General Allegations

### A.
### Plaintiff's Purchase Agreement (Plaintiff's Purchase of PPE from Defendant Analytics)

8.  Plaintiff is in the business of buying and selling personal protective equipment ("PPE"), which includes surgical masks, disposable medical gloves (of varying levels of quality) and gowns, as well as other healthcare related products. The PPE market increased exponentially in 2020 with the onset of the COVID-19 pandemic.

9.  On or about December 21st, 2020, Plaintiff, through an independent broker called Blue Avian Ventures ("BAV"), entered into an agreement with Analytics to purchase 1,358,000

disposable PPE (medical gloves) from Analytics for a price of $162,613.00. At that time, Plaintiff also agreed to step into the shoes of BAV in regard to a separate bi-lateral PPE purchase agreement that BAV had previously entered into with Analytics for its own account (not as a broker for Plaintiff), with a purchase price of $24,402.20 ("BAV/Defendant Analytics Purchase Agreement"). These two agreements are collectively hereinafter referred to as "Plaintiff's Purchase Agreement".[1]

10. In connection with and under the terms of Plaintiff's Purchase Agreement, Analytics generated an invoice dated December 21st, 2020, which reflected the total amount and types of PPE purchased by Plaintiff under Plaintiff's Purchase Agreement, which came to a total of $187,015.20, consisting of $162,613.00 for Plaintiff's direct PPE purchase from Analytics, *plus* $24,402.20 for the separate purchase agreement that Plaintiff assumed from BAV. *See* Defendant Analytics' 12/21/20 Invoice signed by Sheldon J Burnett, as President of Analytics Associates, LLC (the "12/21/20 Invoice"), attached here as "**Exhibit 1**."

11. The BAV/Defendant Analytics Purchase Agreement initially was wholly independent from Plaintiff; in other words, BAV entered into the BAV/Defendant Analytics Purchase Agreement on its own account and not as a broker for Plaintiff or another individual or entity.

12. Thus, the total amount to which Plaintiff agreed to pay per the terms of Plaintiff's Purchase Agreement as correctly represented in the 12/21/20 Invoice was $187,015.20, reflecting Plaintiff's Purchase Agreement price of $162,613.00 *plus* the $24,402.20 from the BAV/Defendant Analytics Purchase Agreement.

---

[1] The terms of Plaintiff's Purchase Agreement are memorialized through text/WhatsApp messages, which are being aggregated and will be further collected through the course of discovery.

13. Plaintiff timely performed all its obligations under Plaintiff's Purchase Agreement (including payment of the full amount of the 12/21/20 Invoice) by paying Defendant Analytics the full invoiced amount of $187,015.20 in two wire transfers, as was agreed to by Mr. Gao on behalf of Plaintiff and Burnett on behalf of Analytics.

14. Specifically, Plaintiff paid Plaintiff's Purchase Agreement (the full invoiced amount of $187,015.20), by wiring $90,845.20 directly to Analytics on December 21st, 2020 (the same date the 12/21/20 Invoice was issued) and by wiring the remaining balance of $96,170.00 to BAV the next day. Prior to the above-described payments by Plaintiff, Analytics approved this manner of payments in a conference call among Defendant Burnett (on behalf of Defendant Analytics), Mr. Gao (on behalf of Plaintiff), and a representative of BAV. *See* Redacted copies of Plaintiff's December 21st and 22nd, 2020 wire transfer confirmations reflecting Plaintiff's payments to Defendant Analytics and BAV, attached here as **"Exhibit 2**."

15. By promptly and timely paying the full amount of the 12/21/20 Invoice in the agreed manner via the wire transfers made on or about December 21st and 22nd, 2020, in the manner agreed to by Defendant Analytics, as described above, Plaintiff fully performed all of its obligations to Analytics in regards to and as required by Plaintiff's Purchase Agreement.

16. In consideration for the above-described two payments made by Plaintiff, Analytics agreed to deliver all the PPE made on the basis of Plaintiff's Purchase Agreement (collectively "The Purchased PPE") to Plaintiff within one month of payment. However, notwithstanding Plaintiff's full payment of the $187,015.20 purchase price in December 2020, Analytics did not deliver the Purchased PPE to Plaintiff within 30 days of Plaintiff's payment as agreed. In fact, to date, twelve months after Plaintiff paid in full for the Purchased PPE, Analytics has failed to deliver any of the Purchased PPE to Plaintiff. This failure constitutes a violation of Plaintiff's Purchase

Agreement by Analytics. Repeated attempts by Plaintiff to resolve this matter and obtain delivery of PPE have proven fruitless as Analytics has failed and refused to deliver The Purchased PPE or undertake any other steps to cure its violation of Plaintiff's Purchase Agreement.

17. As a result of Analytics' violation of Plaintiff's Purchase Agreement, Plaintiff has suffered damages in the amount of $187,015.20, the amount Plaintiff paid for The Purchased PPE that Analytics failed to deliver.

18. Additionally, Plaintiff suffered lost profits that it would have obtained through the near-immediate re-sale of The Purchased PPE to third parties had The Purchased PPE been timely delivered in January to Plaintiff by Analytics.[2] During the time period when Analytics had agreed to deliver The Purchased PPE to Plaintiff, Plaintiff consistently achieved a profit margin exceeding 20% (twenty percent) on the re-sale of PPE which was identical or very similar to The Purchased PPE that Plaintiff ordered from Analytics ("Plaintiff's PPE Profit Margin"). Plaintiff would have been able to achieve this PPE Profit Margin if Analytics had timely delivered The Purchased PPE to Plaintiff. Moreover, Plaintiff was selling PPE "FOB", so there were no shipping costs or other non-overhead costs attributable to re-sale orders.

19. Plaintiff conservatively calculates a 20% profit margin on the $187,015.20 Agreement price for the Purchased PPE, or $37,403.04, as the additional reasonable expectation damages it suffered as a result of Analytics' violation of Plaintiff's Purchase Agreement. Accordingly, Plaintiff has suffered damages in excess of $224,000.00, as a direct result of Analytics' refusal to perform in accordance with the representations it made in Plaintiff's Purchase

---

[2] Due to the curbing of the pandemic and the increased manufacture and availability of PPE since Plaintiff entered into Plaintiff's Purchase Agreement with Defendant Analytics, the market re-sale price of The Purchased PPE has declined significantly since the time The Purchased PPE should have been delivered to Plaintiffs.

Agreement.

## B.
## Plaintiff's PPE Sale Agreement to Defendant Analytics

20. On or shortly before February 1st, 2021, BAV, acting as Plaintiff's authorized broker, arranged a second transaction between Plaintiff and Analytics ("Plaintiff's Sale Agreement") in which Plaintiff agreed to sell to Analytics 26,200 boxes of PPE (disposable medical gloves) containing 100 gloves per box ("Plaintiff's Sold PPE").[3] Plaintiff's Sold PPE were priced at $11.65 per box and thus the total sale price was $305,230.00 (26,200 x $11.65) [$152,615.00 in Cash plus an agreed-upon same-amount in value in PPE to complete this purchase price].

21. Under the terms of the Plaintiff's Sale Agreement, Burnett, on behalf of Analytics agreed to pay half of the sale price (50%) in cash – i.e., $5.825 per box - and the other half (50%) with an in-kind payment of PPE. Specifically, in addition to agreeing to pay $151,450.00 in cash (26,000 x $5.825) ("Analytics Cash Payment"), Analytics, through Burnett, agreed to deliver to Plaintiff 1,226,310 Halyard, Kimtech, and/or other approved 100% 510K Nitrile gloves constituting a value of $151,450.00, which were to be delivered on or before February 4th, 2021 ("Analytics In-Kind Payment").

22. Pursuant to Plaintiff's Sale Agreement, Analytics was to make the Analytics Cash Payment of $151,450.00 up front, and the Analytics and the Analytics In-Kind Payment was to be delivered to Plaintiff on or before February 2021. Plaintiff's obligation to ship Plaintiff's Sold PPE made the basis of Plaintiff's Sale Agreement was conditioned specifically upon Plaintiff's receipt of the Analytics Cash Payment prior to the shipping of Plaintiff's Sold PPE. The Analytics

---

[3] The terms of Plaintiff's Sale Agreement are memorialized through text/WhatsApp messages, which are being aggregated and will be further collected through the course of discovery.

In-Kind Payment was to follow promptly thereafter but was not a precondition to Plaintiff's obligation to ship Plaintiff's Sold PPE.

23. On or about February 1st, 2021, Analytics informed BAV and Plaintiff that Burnett Law had directed its bank to wire the Analytics Cash Payment ($151,450.00) to Plaintiff in accordance with the Plaintiff's Sale Agreement. As purported evidence that the Analytics Cash Payment had been made, and in order to induce Plaintiff to ship Plaintiff's Sold PPE, Defendants furnished to BAV (Plaintiff's broker), a copy of what Defendants collectively and intentionally represented to be a completed wire transfer order from a bank account of Burnett Law to Plaintiff in the amount of the Analytics Cash Payment, $151,450.00. *See* Redacted copy of "Defendants' Putative Wire", attached here as "**Exhibit 3**."

24. Because Plaintiff's obligation to ship Plaintiff's Sold PPE was conditioned specifically upon Plaintiff's receipt of the Analytics Cash Payment, Analytics, Burnett and Burnett Law collectively provided BAV with a copy of Defendants' Putative Wire for the purpose of having BAV immediately provide it to Plaintiff in order to show Plaintiff that the required Analytics Cash Payment had been made, thereby inducing Plaintiff into believing its obligation to ship at that time Plaintiff's Sold PPE to Analytics' "Designated Recipient," M&W Suppliers. The Defendants further assured BAV and Plaintiff that the Analytics' In-Kind Payment would be delivered within the next few days.

25. In reliance on the copy of Defendants' Putative Wire and the contemporaneous assurances of Analytics, Burnett and Burnet Law that the required Analytics Cash Payment had already been sent by wire transfer and the Analytics' In-Kind Payment of PPE would be delivered in the next few days, Plaintiff shipped Plaintiff's Sold PPE to Analytics' Designated Recipient, M&W Suppliers, as is indicated by the Bill of Lading. *See* Bill of Lading and related photo of

PPE, attached here as "**Exhibit 4**."

26. However, the next day – after Plaintiff's Sold PPE had been shipped to Analytics' Designated Recipient -- Plaintiff learned that it had not received any wire transfer from Burnett Law, or any other for the Analytics Cash Payment. Burnett and Burnett Law canceled Defendants' Putative Wire before the transfer to Plaintiff was completed, or in actuality, had never directed Burnett Law's bank to complete Defendants' Putative Wire in the first place, or Defendants had created a fraudulent document which they collectively presented to BAV and Plaintiff or otherwise had found some manner of preventing Plaintiff from receiving the Analytics Cash Payment, if ever such payment was ever actually initiated by the Defendants.

27. Irrespective of the manner in which Defendants were able to prevent Plaintiff from receiving the Analytics Cash Payment, the intentional misrepresentations by all Defendants regarding Defendants' Putative Wire were intended to induce, and did induce, Plaintiff to ship Plaintiff's Sold PPE to Analytics' Designated Recipient, M&W Suppliers. Plaintiff shipped Plaintiff's Sold PPE in reliance on Defendants' assurances, made verbally and by producing Defendants' Putative Wire, that the Analytics Cash Payment had been made and the precondition for Plaintiff's shipment of Plaintiff's Sold PPE had been met, when in fact, Defendants had no intention of consummating any wire transfer for the Analytics Cash Payment to the Plaintiff. Defendant Analytics also failed to ship to Plaintiff any of the PPE constituting the Analytics In-Kind Payment.

28. By relying upon Defendants' Putative Wire and shipping Plaintiff's Sold PPE, Plaintiff fulfilled its obligations under Plaintiff's Sale Agreement. However, to date, Analytics has failed to pay Plaintiff any of the Analytics Cash Payment of $151,450.00 as required by Plaintiff's Sale Agreement and has failed to deliver to Plaintiff any of the PPE which was to

constitute the Analytics In-Kind Payment under Plaintiff's Sale Agreement.[4] Defendant Analytics has wholly failed to perform in accordance with the representations it made to Plaintiff under Plaintiff's Sale Agreement, in violation of that Agreement.

29. As a direct result of Analytics' breach of Plaintiff's Sale Agreement, Plaintiff has suffered damages in excess of $75,000.00, as calculated by the price of Plaintiff's Sold PPE set forth in Plaintiff's Sale Agreement, which Plaintiff delivered in compliance with Plaintiff's obligation under Plaintiff's Sale Agreement, but for which Analytics has failed to pay, in violation of its obligations under Plaintiff's Sale Agreement.

30. All conditions precedent to filing this action, including any required notices or demands, have been performed, have occurred, or have been excused or waived.

31. Plaintiff has incurred, and will continue to incur, legal fees and expenses in the enforcement of the Plaintiff's Purchase Agreement and Plaintiff's Sale Agreement, including the prosecution of this action.

## IV.
## Causes of Action

### COUNT I:
### Unjust Enrichment
### (Against Defendant Analytics)

32. Plaintiff incorporates by reference and realleges all allegations in paragraphs 1 through 30 above as if recopied in their entirety and fully set forth below for all purposes.

33. Plaintiff asserts a count against Analytics for unjust enrichment. By Plaintiff paying Analytics $187,015.20 for PPE that Analytics failed to deliver and by sending Analytics goods worth $302,900.00 for which Analytics failed to pay, Plaintiff has conferred substantial

---

[4]. Neither Burnett or Burnett Law has paid any of the money owed as well.

benefits on Analytics, which has full knowledge and appreciation of those benefits conferred. Analytics has voluntarily accepted and retained the benefits conferred under circumstances that make it inequitable for Analytics to retain those benefits without paying for them.

34. As a result of Analytics' unjust enrichment to the detriment of Plaintiff, Plaintiff has been damaged and seeks restitution from Analytics in the amount in excess of $75,000.00, plus court costs and prejudgment interest and such other relief as the Court deems just and proper.

WHEREFORE, Plaintiff requests that the Court enter an order finding that Analytics has been unjustly enriched at Plaintiff's expense and ordering Analytics to make restitution to Plaintiff and award damages in excess of $75,000.00, plus court costs and prejudgment interest and such other relief as the Court deems just and proper.

### COUNT II:
### Fraud
### (Against All Defendants)

35. Plaintiff incorporates by reference and realleges all allegations in paragraphs 1 through 30 above as if recopied in their entirety and fully set forth below for all purposes.

36. Analytics, Burnett, and Burnett Law fraudulently induced Plaintiff to ship the PPE that made the basis of Plaintiff's Sale Agreement by falsely representing to BAV and Plaintiff that the Burnett Law had initiated from one of its' bank accounts, Defendants' Putative Wire to Plaintiff's designated bank account in the amount of $151,450.00.

37. Analytics, Burnett, and Burnett Law further falsely represented to Plaintiff that the remaining one-half (50%) payment (Defendant's In-Kind Payment), under the terms of Plaintiff's Sale Agreement, would be timely delivered to Plaintiff within a few days thereafter, of which none has ever been delivered.

38. Analytics, Burnett and Burnett Law knew the above-described representations and

statements of fact were false at the time they were made, and these false representations and statements were intended to induce Plaintiff to ship Plaintiff's Sold PPE made the basis of Plaintiff's Sale Agreement, which in fact did occur.

39. Burnett Law participated in the fraud by and through Burnett Law's directing its bank to issue Defendants' Putative Wire, and then – after (and with actual knowledge that) Analytics, Burnett and Burnett Law had shown Defendants' Putative Wire (and directed BAV to show said Defendants' Putative Wire to Plaintiff) - then either canceled Defendants' Putative Wire before the funds were finally deposited in Plaintiff's account, or; Barnett Law created a false (never completed wire transfer) through an incomplete, forged and/or never fully submitted wire document(s) to its bank, for the direct and intended purpose that BAV provide a copy of Defendants' Putative Wire and related representations specific to Defendants' Putative Wire to Plaintiff, for the purposes of representing to Plaintiff (through its principal, Defendant Burnett), that the printout of Defendants' Putative Wire was a genuine record of <u>an actual completed wire transfer</u> Defendant Burnett law had directed its bank to make.

40. Analytics and Burnett had coordinated this plan with Burnett Law, to defraud Plaintiff, and all three Defendants knew that Defendant's Putative Wire would never result in payment to Plaintiff from Burnett Law's bank account, or by Analytics or Burnett.  Analytics and Burnett knew this at the time of their communications with Plaintiff and BAV (which included publishing Defendants' Putative Wire to BAV with the intention that BAV show said Putative Wire to Plaintiff), and Burnett Law knew this at the time these actions regarding Defendants' Putative Wire were undertaken.

41. Plaintiff justifiably relied on the above-described representations and acted upon said representations by shipping Plaintiff's Sold PPE to Analytics Designated Recipient (M&W

11

Suppliers), per Analytics' instructions. Plaintiff would not have shipped Plaintiff's Sold PPE in the absence of the representations and statements made by Defendants (including Defendants' Putative Wire).

42. Under the "Flexibility Theory" of damages followed in Florida, a defrauded party is entitled to the measure of damages that will fully compensate him. *Nordyne, Inc. v. Fla. Mobile Home Supply, Inc.*, 625 So.2d 1283, 1286 (Fla. 1st DCA 1993) ("The 'flexibility theory' permits the court to use either the 'out-of-pocket' or the 'benefit-of-the-bargain' rule, depending upon which is more likely fully to compensate the injured party.").

43. Thus, Plaintiff is entitled to recover benefit-of-the-bargain damages from Analytics, Burnett, and Burnett Law in excess of $75,000.00.

44. Likewise, Plaintiff is entitled to recover out-of-pocket damages in excess of $75,000.00, since Plaintiff received nothing in return. These damages should be at least equal to the value (as of the time of the fraud) of the PPE which Plaintiff shipped under the terms of the Plaintiff's Sale Agreement as a result of the fraud.

45. Moreover, because all three Defendants were personally guilty of intentional misconduct, Plaintiff reserves the right to seek punitive damages against each of them from Burnett, Analytics and Burnett Law pursuant to Section 768.72, Florida Statutes. In regard to the misrepresentations discussed herein, each of the three Defendants had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

46. Burnett Law actively and knowingly participated in this conduct (which used Burnett Law's bank account to either issue and rescind a wire transfer order, or; produce a falsified

document which falsely purported to evidence a wire transfer though no such transfer order was ever placed), with the intent to use Defendants' Putative Wire to induce Plaintiff to ship the PPE, per Plaintiff's Sale Agreement. Moreover, Burnett Law's manager and principal (Burnett) condoned, ratified, consented to, and in fact perpetrated the intentional misconduct described herein.

47. Likewise Analytics actively and knowingly participated in this conduct, and Analytics' member and principal (Burnett) condoned, ratified, consented to, and in fact perpetrated the intentional misconduct stated above.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against each Defendant, jointly and severally, for fraud, and award damages in excess of $75,000.00, court costs and prejudgment interest and such other relief as the Court deems just and proper. Plaintiff reserves the right to claim punitive damages in accordance with governing law.

### COUNT III:
### Promissory Estoppel
### (Against Defendant Analytics)

48. Plaintiff incorporates by reference and realleges all allegations in paragraphs 1 through 30 above as if recopied in their entirety and fully set forth below for all purposes.

49. Plaintiff asserts a count against Analytics for promissory estoppel.

50. Specifically, Analytics promised Plaintiff that it would deliver certain PPE in exchange for Plaintiff's payment of $187,015.20 to Analytics and BAV.

51. In reliance of this representation, Plaintiff wired $90,845.20 directly to Analytics on December 21st, 2020, and wired the remaining balance of $96,170.00 to BAV the next day.

52. Prior to the above-described payments by Plaintiff, Analytics approved this manner of payments in a conference call among Defendant Burnett (on behalf of Defendant Analytics),

Mr. Gao (on behalf of Plaintiff), and a representative of BAV.

53. Analytics represented that it would deliver all a set volume of PPE to Plaintiff within one month of these payments.

54. Notwithstanding Plaintiff's full payment of the $187,015.20 in December 2020, Analytics did not deliver the Purchased PPE to Plaintiff within 30 days of Plaintiff's payment as agreed.

55. To date, twelve months after Plaintiff paid in full for the Purchased PPE, Analytics has failed to deliver any of the Purchased PPE to Plaintiff.

56. As a result of Plaintiff's reliance on Analytics' representations as to the material fact it would provide certain PPE upon Plaintiff's payment of certain funds, and Analytics' change in that position to Plaintiff's detriment, resulting in Plaintiff being damaged in an amount exceeding $75,000.00.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Analytics, for promissory estoppel, and award damages in excess of $75,000.00, court costs and prejudgment interest and such other relief as the Court deems just and proper.

### COUNT IV:
### Promissory Estoppel
### (Against All Defendants)

57. Plaintiff incorporates by reference and realleges all allegations in paragraphs 1 through 30 above as if recopied in their entirety and fully set forth below for all purposes.

58. Plaintiff asserts a count against all Defendants for promissory estoppel.

59. BAV, acting as Plaintiff's authorized broker, arranged a transaction in which Plaintiff agreed to sell, and Analytics agreed to purchase identified and agreed-upon PPE for a total sale price of $302,900.00.

60. Analytics represented the material fact to Plaintiff that it would pay $151,450.00 to Plaintiff and would also ship 1,226,310 of certain specified gloves to Plaintiff, valued at $151,450.00.

61. In reliance on Analytics' representations, and in exchange for that payment, Plaintiff agreed that it would ship certain PPE to Analytics' Designated Representative in exchange for Analytics making the above payments and transfer of gloves to Plaintiff.

62. To induce Plaintiff to ship Plaintiff's PPE to Analytics, Analytics, Burnett and Burnett Law - through the production of the Defendants' Putative Wire ($151,450.00) to BAV (instructing BAV to show this document to Plaintiff), represented and purported to BAV and Plaintiff (through BAV) to confirm that the one-half (50%) of Analytics' promised payment had been made by Barnett Law, to Plaintiff's designated bank account, on behalf of Analytics.

63. In reliance upon these verbal and documentary representations made by Analytics, Burnett and Burnett Law, Plaintiff did at one time, in one shipment, ship all the PPE to Analytics' Designated Recipient, thereby fully performing its obligation under Plaintiff's Sale Agreement.

64. However, Defendants Burnett and Burnett Law canceled Defendants' Putative Wire before the transfer to Plaintiff was completed, or in actuality, had never directed Burnett Law's bank to complete Defendants' Putative Wire in the first place, or Defendants had created a fraudulent document which they collectively presented to BAV and Plaintiff or otherwise had found some manner of preventing Plaintiff from receiving the Analytics' Cash Payment, if ever such payment was ever actually initiated by the Defendants.

65. Despite Defendants' representations to the contrary, Analytics still has not made the promised monetary and in-kind payment to Plaintiff, despite Plaintiff shipping all of Plaintiff's promised PPE to Analytics' Designated Representative.

66. As a result of Defendants' misrepresentations, Plaintiff has suffered damages in excess of $75,000.00.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against all Defendants, jointly and severally, for promissory estoppel, and award damages in excess of $75,000.00, court costs and prejudgment interest and such other relief as the Court deems just and proper.

## COUNT V:
### Account Stated
### (Against All Defendants)

67. Plaintiff incorporates by reference and realleges all allegations in paragraphs 1 through 30 above as if recopied in their entirety and fully set forth below for all purposes.

68. Plaintiff asserts a count against all Defendants for account stated.

69. BAV, acting as Plaintiff's authorized broker, arranged a transaction in which Plaintiff agreed to sell, and Analytics agreed to purchase identified and agreed-upon PPE for a total sale price of $302,900.00.

70. Analytics represented the material fact to Plaintiff that it would pay $151,450.00 to Plaintiff and would also ship 1,226,310 of certain specified gloves to Plaintiff, valued at $151,450.00.

71. In reliance on Analytics' representations, and in exchange for that payment, Plaintiff agreed that it would ship certain PPE to Analytics' Designated Representative in exchange for Analytics making the above payments and transfer of gloves to Plaintiff.

72. To induce Plaintiff to ship Plaintiff's PPE to Analytics, Analytics, Burnett and Burnett Law - through the production of the Defendants' Putative Wire ($151,450.00) to BAV (instructing BAV to show this document to Plaintiff), represented and purported to BAV and

Plaintiff (through BAV) to confirm that the one-half (50%) of Analytics' promised payment had been made by Barnett Law, to Plaintiff's designated bank account, on behalf of Analytics.

73. In reliance upon these verbal and documentary representations made by Analytics, Burnett and Burnett Law, Plaintiff did at one time, in one shipment, ship all the PPE to Analytics' Designated Recipient, thereby fully performing its obligation under Plaintiff's Sale Agreement.

74. However, Defendants Burnett and Burnett Law canceled Defendants' Putative Wire before the transfer to Plaintiff was completed, or in actuality, had never directed Burnett Law's bank to complete Defendants' Putative Wire in the first place, or Defendants had created a fraudulent document which they collectively presented to BAV and Plaintiff or otherwise had found some manner of preventing Plaintiff from receiving the Analytics' Cash Payment, if ever such payment was ever actually initiated by the Defendants.

75. The parties agree that the balance outstanding on this transaction is correct and due.

76. Defendants have made an express or implicit promise to pay their outstanding balance as owed to Plaintiff.

77. Analytics still has not made the promised monetary and in-kind payment to Plaintiff, despite Plaintiff shipping all of Plaintiff's promised PPE to Analytics' Designated Representative.

78. As a result of Defendants' misrepresentations, Plaintiff has suffered damages in excess of $75,000.00.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against all Defendants, jointly and severally, for account stated, and award damages in excess of $75,000.00, court costs and prejudgment interest and such other relief as the Court deems just and proper.

Dated: December 29, 2021

Respectfully submitted,

**MARK MIGDAL & HAYDEN**
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone: 305-374-0440

By: *s/ Donald J. Hayden*
Donald J. Hayden, Esq.
Florida Bar No. 97136
don@markmigdal.com
Daniel S. Maland, Esq.
Florida Bar No. 114932
daniel@markmigdal.com
eservice@markmigdal.com

*Attorneys for Plaintiff*
*PPE Trade & Support, LLC*


**LAW OFFICES OF**
**S. GEORGE ALFONSO**
5220 Spring Valley Road, STE 200
Dallas, TX. 75254
Phone:  (972) 725-7940

By: *s/ S. George Alfonso*
S. George Alfonso
TX State Bar No. 00785658
SGeorge@WorldWideCounsel.Net

*Co-Counsel for Plaintiff*
*PPE Trade & Support, LLC*
*Pro Hac Vice* Pending